Dora M. Simmons v. Commissioner.
Simmons v. Commissioner
Docket No. 32632.
United States Tax Court
1952 Tax Ct. Memo LEXIS 165; 11 T.C.M. (CCH) 656; T.C.M. (RIA) 52198; June 24, 1952
*165 James J. Waters, Esq., 712 Commerce Bldg., Kansas City, Mo., for the petitioner. David Karsted, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined a deficiency in income tax for 1947 in the amount of $6,830.71. The deficiency results from the respondent's determination that the petitioner realized capital gain upon the sale of capital assets in 1947 in a greater amount than she computed and reported in her return for 1947. The parties disagree about the adjusted basis of property which was sold in 1947. The property in question was acquired by the petitioner in 1941 through inheritance from her husband who died on June 1, 1941. The property is improved real estate, an automobile tourist court known as "Simmons Modern Cottages." The property was sold on August 15, 1947. Several items enter into the computation of the adjusted basis of the property for determining the amount of the gain realized upon the sale, and the issues for decision relate to the following: (1) the fair market value on June 1, 1941, of the realty, of the buildings and improvements, and of the furniture and equipment; (2) whether *166 disbursements to the children of the petitioner's deceased husband, and costs of a judicial confirmation, out of the income of the automobile court business constituted capital expenditures made to perfect petitioner's title to the realty; (3) the costs and dates of the purchases of the furniture and equipment which was sold along with the property for the dual purpose of inclusion in basis and the adjustments of basis for depreciation prior to August 15, 1947, the date of sale. The petitioner filed her return for 1947 with the collector for the sixth district of Missouri. Findings of Fact The petitioner, a resident of Missouri, is the widow of Frank Simmons who died, testate, on June 1, 1941, a resident of Missouri. Frank Simmons and the petitioner were married in 1933. One child was born of this marriage, a daughter named Nancy, who was a minor at the time of the death of her father. Frank Simmons had been married before his marriage to the petitioner, and he was survived by three children of his former marriage, namely, Homer Simmons, Marie McDowell, and Lois Hollaway, all of whom were married persons in 1945. 1. The petitioner and Wilson Simmons were both the duly appointed *167 co-executors of the estate of Frank Simmons, and cotrustees for the minor child, Nancy, under his will. Frank Simmons, deceased, is referred to hereinafter as the decedent. In 1933, the decedent purchased a traingular piece of land, about 5 1/2 acres, which was located on U.S. Highway 40 and Blue Ridge Road, in Jackson County, Missouri, ten miles east of Kansas City, Missouri, and four miles south of Independence, Missouri. He purchased the property for $10,000 at a public sale. The property, at the time of purchase, was improved with a small, two room dwelling, a filling station, and a barn. The decedent made improvements on the property between the time of purchase and his death, which, in general, consisted of cabins or cottages for the operation of an automobile tourist court, and he conducted a tourist court business on the property until he died. When he died, he owned the tourist court property called "Simmons Modern Cottages." After his death, the petitioner continued the operation of the business. The decedent executed his last will and testament on May 14, 1941, and it was duly admitted to probate. In his last will, the decedent bequeathed to each of the three children *168 of his former marriage the sum of one dollar, each, as well as to petitioner's and his daughter, Nancy. He bequeathed to the petitioner and his four children, in equal shares, all of the real estate in Parker County, Texas, of which he might die possessed. He bequeathed all of the residue of his estate to his wife, Dora Simmons, subject only to trusts for the benefit of his minor child, Nancy, and his other three children, as described hereinafter. The residue of his estate consisted of the property and business known as "Simmons Modern Cottages," and he directed, in his will, his wife, Dora Simmons, to set aside out of the net income of the business, after reasonable operating expenses and reasonable living expenses for herself, $50 each month in trust for Nancy's support, care, and education, until $3,000 was accumulated. He directed, further, that his wife, after first accumulating $3,000 for Nancy out of the net income of the business, as above defined, should pay to Homer, Marie, and Lois, in equal installments to each, quarterly or monthly, such sums as the business in her discretion would reasonably permit, so that at the end of five years after his death, each of them would *169 have received, without interest on deferred payments, the sum of $2,000. Since the decedent died on June 1, 1941, the five year period designated in his will, ended on June 1, 1946. The petitioner was obliged to use income of the business to pay the funeral expenses and debts of the decedent, and was ordered to use income of the business for those purposes by the Probate Court under its order of July 14, 1941. In June, 1944, the petitioner filed a Petition for Declaratory Judgment and Construction of Will in the Circuit Court of Jackson County, Missouri, naming as defendants, all of the four children of the decedent, and Wilson Simmons, as co-trustee for Nancy and as co-executor of the estate, in which she stated that because she had been operating the property to obtain funds with which to pay the decedent's debts under the order of the Probate Court, she had not been able to comply with the directions in decedent's will to pay net income to trustees for Nancy and to pay net income to the other children of the decedent, and that all of the decedent's debts had been paid, as of the time of the filing of the petition. She stated, further, that earnings of the business had decreased *170 because of war restrictions and that she did not anticipate being able to comply with the directions in the decedent's will relating to the setting aside of $3,000 of net income for Nancy's benefit, and for payment of $2,000 to each of decedent's other three children during the period which would end on June 1, 1946. She stated, also, that she understood the will of the decedent to contain bequest to her of the fee simple title of the real property where the business was operated, and to give to each of the four children of the decedent only an interest in the net income which she might derive from the operation of the property during the period of five years after the decedent's death. She stated, further, that $1,050 had been paid out of the net income of the business to the co-trustees for Nancy, and that she understood that the other three children had no claim to or interest in that trust fund. On the basis of her several averments she prayed the court to construe the will and to determine, inter alia, that she was the sole and absolute owner of the fee simple title to the real estate, and that none of the defendants should have any interest in the net income derived from the *171 operation of the property after June 1, 1946. The court's judgment in the proceeding was entered on December 29, 1945. While the matter was pending, the petitioner, on August 6, 1945, obtained from each of the three adult children of the decedent, Homer, Marie, and Lois, written releases of the obligation to pay to each of them the sum of $2,000, or any other sum, out of the net operating income of the business in consideration for the payment of $300 to each, or a total of $900. Homer, Marie, and Lois, also gave the petitioner quit claim deeds to the real property where the business was conducted. Also, the petitioner paid to herself and Wilson Simmons as co-trustees for Nancy, the balance of the total sum of $3,000 in compliance with her obligation under the will. In discharge of all of her obligations under the will to make payments of income to the decedent's children, and in payment of attorney's fees and costs, the petitioner expended the total sum of $5,153.96. In its decree of December 29, 1945, the court found that Dora Simmons became vested with the fee simple title to the real property under the decedent's will, subject only to the rights granted by the will to each *172 of the four children "to participate in income derived from the operation thereof." The court found, further, that the fund of $3,000 was to be held in trust for Nancy, and that none of the four children had any remaining right to or interest in the income of the property. The provisions in Article VI of the last will of the decedent in which he directed his wife Dora Simmons to make payments to his children out of the income of the Simmons Cottages' business were ambiguous because two conditions conflicted with each other if income were inadequate for compliance therewith; that is to say, Dora Simmons could not pay $2,000 to each of the three adult children, or $6,000, within five years after the decedent's death, and also first pay and accumulate $3,000 for the benefit of the minor child before making any payments out of income to the three adult children, and still, within five years, pay $6,000 to the adult children, if the net income of the business was insufficient to enable her to comply with the directions. The petitioner, by filing her petition for construction of the decedent's will and declaratory judgment, obtained judicial determination that the interests of the children *173 were, under the will, interests in the income; and since, as co-executor of the will, she had been required to use income to pay the funeral expenses and debts of the decedent, by the Probate Court, her petition served to obtain judicial approval of her use of the income dehors the express directions in the will, and of her settlement with the three adult children under which each received $300 instead of $2,000. The total expenditure of $5,153.96 related to the fiduciary obligations under the will of the petitioner, Dora Simmons, with respect to the use of the net income of the Simmons Cottages business. The right of Dora Simmons, as an heir and legatee of the decedent under his will, to the fee simple title to the real property where the business was conducted was clearly provided by the will, and was separate and apart from her fiduciary duties under the will relating to the use of the income of the business. The expenditure of $5,153.96 was not directly and proximately related to the acquisition by the petitioner of title to the real property and does not constitute part of the basis to the petitioner of the real property. 2. When the decedent, Frank Simmons, purchased the *174 5 1/2 acres on U.S. Highway No. 40 in 1933, the condition of the property was not good. A two room house on the property was without water but had electricity. During the eight years he held the property, until his death, Simmons improved the property, and its value was greater in June 1941 than it was in 1933, when Simmons purchased the property at a public sale for $10,000. Between 1933 and 1935, the two room dwelling was enlarged to a four room house and made modern with water and baths; the barn was remodeled as a cafe or night club; and twelve single unit tourist cabins were built, which were of frame and stucco construction, and which did not have garages attached. After 1935, further improvements were made. In 1940, the old barn was torn down and three new cottages and a public dining room or cafe, were constructed of concrete blocks. Also, a new filling station of concrete blocks was constructed. The three new tourist cabins contained two apartments each, six units, with baths, and had garages attached. They were of better construction than the old cottages. The new public dining room was equipped with restaurant equipment, including a new, large range, ten tables, forty chairs, *175 dishes, silverware, cooking utensils, and sink. The new construction in 1940 was done by a contractor, and good masonry and other work was done. On June 1, 1941, there were a total of eighteen rental units on the property, six of which were about one year old, and twelve of which were eight years old, or less. The dwelling house of four rooms, the public restaurant, and the eighteen rental units were furnished at the time Simmons died. The floors of the six new units were covered with battleship linoleum; the floors of the twelve old units were covered with linoleum rugs which were seven or eight years old, but for these quarters twelve new linoleum rugs had been purchased in 1941 at a cost of $10 each, which had not been put down on the floors. In 1941, there was a natural gas well located on the property which produced gas for heating all of the buildings. Prior to the death of the decedent, Simmons, furniture and furnishings were purchased for the tourist cottages and the new dining room at the dates and for the amounts set forth below: June, 1941
240 yds. new linoleum
$ 772.12
12 new linoleum rugs
120.00
July, 1940
New furniture
210.73
1 new refrigerator
500.00
Kitchen equipment, tables, chairs,
kitchen range
350.00
May, 1940
7 Coleman, gas, floor furnaces
297.03
$2,249.88
*176 On June 1, 1941, the fair market value of the property known as "Simmons Modern Cottages," the land, buildings, and furnishings was $28,000 of which $15,000 was the fair market value of the land and $13,000 was the fair market value of the buildings and furnishings. The improvements and furnishings were depreciable over a useful life of ten years. 3. After June 1, 1941, and before the sale of the property on August 15, 1947, the petitioner spent $6,026.31 for additional improvements. The costs of the sale in 1947 were $460.25. On October 17, 1941, the petitioner purchased twelve Gypsy gas heaters for the old cottages at a total cost of $293.78. The total cost of furniture and equipment purchased in 1940 and 1941 (see supra) was $2,543.66. Opinion The petitioner claims that the unadjusted basis of the Simmons property on August 15, 1947, for the purpose of computing gain upon the sale thereof for $55,000, was $51,790.52, as follows: Fair market value of property 6/1/41
$35,150.00
Improvements after 6/1/41
6,026.31
Costs of sale
460.25
Cost of litigation, allegedly over title
5,153.96
Furniture
5,000.00
Total
$51,790.52
The respondent agrees, *177 only, that improvements after June 1, 1941, cost $6,026.31, and that the costs of the sale amounted to $460.25. He contends that the fair market value of the property on June 1, 1941, was $16,000, of which $5,000 is allocable to the land. Upon consideration of all of the evidence it is found that on June 1, 1941, the fair market value of the property was $28,000, of which $15,000 is allocable to the land, and $13,000 is allocable to the buildings and furniture. For reasons set forth hereinafter, it is concluded that no part of $5,153.96, the disbursements and costs of settling the claims of the decedent's children to income from the business conducted on the Simmons property, properly can be added to the basis of the property. It is also concluded that $5,000, the alleged value of all of the furniture located on the premises on the date of sale in 1947 cannot be added to the basis. The ultimate question is the amount of the adjusted basis of the Simmons property for the purpose of computing gain realized from the sale of the property in 1947. The petitioner has the burden of proving what elements entered into the computation of the adjusted basis as of August 15, 1947. It is *178 not necessary to discuss extensively the detailed aspects of the evidence relating to the various elements which enter into the computation of the adjusted basis. All of the evidence has been carefully analyzed and considered. Furthermore, the respondent has correctly cited to the Court for its consideration the rule that costs of reconstructing property are net evidence of the fair market value of property on the valuation date. See , affd. , certiorari denied, ; ; and . Consideration has been given to this rule, and it militates against the opinion expressed by the petitioner's witness, Stiles, about the fair market value on June 1, 1941, of the buildings located on the Simmons property. Three factors are in dispute, the fair market value of the land and buildings on June 1, 1941; the proprietary [propriety] of adding to basis the disbursements and costs of settling claims of children of the decedent; the fair market value on June 1, 1941, of furniture located on the premises, the *179 cost or basis of furniture located on the premises and sold on August 15, 1947, and the extent of depreciation of all of the depreciable property - buildings and furniture - on August 15, 1947, for the purpose of determining adjusted basis. 1. Fair market value of land and buildings on June 1, 1941. The meaning of fair market value for tax purposes is well understood. Each party called witnesses to express opinions of the fair market value of the property on June 1, 1941. All of the witnesses encountered difficulty in finding sales of comparable property on or close to the valuation date, June 1, 1941. The respondent's witnesses did not agree on certain matters such as the fair market value of the land as distinguished from the fair market value of buildings, and upon the point of whether the value of the property had increased between 1933 and 1941. The respondent called two witnesses, Child and Siegfried, to express opinions of the fair market value of the Simmons property on June 1, 1941. Respondent's witness, Child, did not know of any sale of comparable property in 1941. He based his opinion of the fair market value of the land and of the improvements and of the whole property *180 on June 1, 1941, upon a sale of property made in 1946, but he selected a sale of property which was sold for $18,000 rather than a sale of property which sold for $23,500 without explaining the reasons for his choice and without showing that either one or the other was really comparable to the Simmons property. His opinion of the fair market value of the Simmons property is entitled to receive little weight. Respondent's witness, Siegfried, testified about four sales of unimproved property in the vicinity of the Simmons property at about the time, June 1, 1941. Not one of these properties was comparable to the Simmons property. Furthermore, he did not know that the Simmons property had been purchased in 1933 for $10,000. His opinion of the fair market value of the Simmons property is entitled to receive little weight. The petitioner's two witnesses agreed that the land had a fair market value on June 1, 1941, of $15,000. Weaknesses are evident in the opinions expressed by each of the witnesses, the respondent's witnesses as well as the petitioner's witnesses. In this situation, the Court has been obliged to exercise its best judgment after a careful review of the entire record *181 and by weighing the various facts found in all of the evidence. The following factors have been regarded as entitled to considerable weight: When the property was purchased in 1933 for $10,000 the improvements amounted to very little and appear to have had a comparatively low value. During 8 years property values increased, improvements were made, and a business was conducted on the property. Witnesses of each party to this proceeding stated that value was not greatly affected by the record of the earnings of the business. Accordingly, whatever increase in value occurred up to June 1, 1941, was due to increase in property value and improvements. Since the price for which the property was sold in 1933 provides reasonably good evidence of the value of the land in 1933, the respondent's witnesses have placed too low a value upon the land on June 1, 1941. Two of the petitioner's witnesses testified that the land had a value of $15,000. It was a triangular piece of land and, therefore, had 3 frontages. By 1941 the land had been improved considerably. There is no reasonable ground for rejecting the value of $15,000 for the land expressed by the petitioner's witnesses. One of the respondent's *182 witnesses valued the buildings as of June 1, 1941, together with the furniture, at $10,000. In 1940, six new units were constructed so that they were about one year old. These were important additions to the property, since they included a new restaurant. In 1941 new equipment and furniture was purchased at a cost of $892.12; and in 1940, other furniture and equipment was purchased for $1,357.76, a total cost of $2,249.88, upon which there was depreciation of roughly $150 by June 1, 1941. The petitioner's witness, Stiles, erred in his method of forming an opinion of the value of the buildings on June 1, 1941. Therefore, his opinion is not entitled to full weight. All of the evidence considered, it has been found that the buildings and furnishings had a fair market value on June 1, 1941, of $13,000. In making this finding of fact, the Court has been unable to make any particular finding about the fair market value on June 1, 1941, of the furniture and furnishings in the 12 old rental units because of failure of proof. The record does not show anything about the furnishings of the older units, and it appears that they were around 8 years old. It is not possible to apply the rule *183 of . Cf. . The petitioner claims that $5,000 should be included in the basis of the property as of August 15, 1947, for furniture. There is no evidence that all of the furniture which was sold with the property on August 15, 1947, cost the petitioner $5,000. There is evidence that furniture was purchased in 1940 and 1941 for a total cost of $2,543.66. The foregoing amount, only, is properly includible in the unadjusted basis of the property as of August 15, 1947. The petitioner loses part of the issue relating to the basis of furniture for failure of proof. 2. Disbursements of $5,153.86. The petitioner would be entitled to include in the basis of the property sold in 1947 capital expenditures such as the cost of removing a cloud on the title to the realty involved in this proceeding or the cost of perfecting petitioner's title to the realty. The petitioner has claimed that the foregoing amount is includible in the basis of the property on the theory that the disbursements and expenses involved perfected her title to the real property. The evidence does not support such theory. Under *184 the will of the petitioner's deceased husband, title to the realty vested in her upon his death under the terms of his will which were clear. None of the children of the decedent ever made any claim to any interest in the realty. Also, none of the children ever instituted a proceeding against the petitioner to litigate any of their claims under the decedent's will. The evidence in this proceeding is very clear with respect to the reasons for the disbursements of $5,153.96. In his will the decedent conveyed the fee simple title to the realty to the petitioner, outright. But he gave her specific directions about the use and application of the income of the business being conducted on the real property, and he did not give her an unconditional and complete interest in the income of the business. Rather, he directed that one child was to receive $3,000 out of the income and that the other three children were to receive income under certain restrictions. Their right to income was conditioned upon the prior establishment of a fund of $3,000 for the minor child, and was restricted as to the time within which income from the business was to be paid to them - during 5 years after his death. *185 These provisions in the will were conflicting; and furthermore the petitioner, as co-executor of her husband's estate, had been required under order of the probate court to use income from the business to pay the decedent's funeral expenses and debts. In these circumstances, the petitioner filed a petition with the Circuit Court of Jackson County for instruction as to how she could properly comply with the directions in the will relating to the distribution of the income of the business during the period of 5 years following the decedent's death. In carrying out the directions relating to the distribution of the income of the business, the petitioner occupied the position of a fiduciary. She finally discharged her obligations under the will with respect to the distribution of income by paying income to each of the children, and each of them accepted the payments she was able to make in satisfaction of their respective rights to receive income under the will. Under the facts, the expenditures, including costs, of $5,153.96 did not represent expenditures to perfect the petitioner's title to the realty. They were, clearly, expenditures relating to the settlement of claims to participate *186 in the income of the business. Therefore, the expenditures in question cannot be added to the basis of the property. 3. Depreciation. It is necessary for the parties to recompute the adjusted basis of the property sold in 1947 under Rule 50. Adjustments for depreciation automatically follow from the finding that the fair market value of the depreciable property - buildings and furniture - on June 1, 1941, was $13,000. Income tax returns received in evidence show the amounts of depreciation deducted prior to 1947 about which there is no dispute. The findings of fact relating to new furniture and equipment which was purchased in 1940 and 1941 in the total amount of $2,543.66 will enable the parties to compute the proper adjustment for depreciation prior to August 15, 1947, on such items of furniture and equipment. Otherwise, there is failure of proof under the general issue relating to depreciation. Recomputation of the petitioner's liability for tax for the year 1947, is necessary under Rule 50, and, therefore, the parties may agree upon the adjustments properly to be made for depreciation. The unadjusted basis of the property sold in 1947 under our findings was as follows: Fair market value of land 6/1/41
$15,000.00
Fair market value of buildings 6/1/41
13,000.00
Improvements after 6/1/41
6,026.41
Cost of furniture 1940-1941
2,543.66
Costs of sale
460.25
Total
$37,030.22
*187 Decision will be entered under Rule 50.